UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **NAKIRA CHARLES ET AL** | **CASE NO.  2:20-CV-00800** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TONY MANCUSO ET AL** | **MAGISTRATE JUDGE KAY** |

<u>**MEMORANDUM RULING**</u>

Before the Court is a Motion for Summary Judgment (Doc. 19) filed by Defendant Tony Mancuso, in his official capacity as Sheriff of Calcasieu Parish, and unknown deputies, wherein Defendants move the Court to grant a complete, full, and final dismissal of all of Plaintiffs Nakira Charles, D. Davis (minor child of Plaintiff Charles), Nashya Hays, and Skyler Johnson's claims with prejudice. Plaintiffs do not oppose dismissal of their federal claims, however, request that the court dismiss without prejudice their state law claims. Doc. 25. The motion is ripe.

## I. BACKGROUND

This lawsuit arises from a vehicle stop made on August 23, 2019, by officers with the Calcasieu Parish Sherriff's Office.[1] On January 19, 2019, Plaintiff Charles entered into a Rental Purchase Agreement of a 2011 Ford Explorer with A&D Financial Services ("A&D"), 2745 E. Napoleon St. Sulphur, La 70663.[2] On July 29, 2019, Ms. Voge with A&D reported that she contacted Plaintiff Charles who told her she would make a payment

---

[1] Doc. 25-1, p. 2.
[2] Doc. 19-6, p. 19.

on the vehicle on July 30, 2019.[3] On July 31, 2019, Ms. Voge stated that Plaintiff Charles called her an said she could not come in to make the payment because she was working late.[4]

On August 12, 2019, Plaintiff Charles was put in default on the January 19, 2019 Rental Purchase Agreement.[5] On August 22, 2019, A&D reported the vehicle as stolen for Plaintiff Charles's failure to make several payments and failure to return the rented 2011 Ford Explorer in violation of Louisiana Revised Statutes section 14:220.[6] Deputy Matthew Nunez of the Calcasieu Parish Sherriff's Office responded to the complaint.[7] Officer Nunez entered the complaint information from into the Calcasieu Parish Sherriff's Office computer system via email to Calcasieu Parish Sheriff's Office Dispatch.[8] Dispatch listed the vehicle driven by Plaintiff Charles as stolen pursuant to Louisiana Revised Statutes section 14:220 and entered the vehicle information into the National Crime Information Center ("N.C.I.C.").[9]

On August 23, 2019, a license plate reader camera that had been set up caught a picture of the license plate on the white 2011 Ford Explorer and alerted the Calcasieu Parish Sherriff's Crime Center, which in turn notified Dispatch.[10] Dispatch notified patrol units that a white 2011 Ford Explorer bearing Louisiana Plate No. 872CXI was reported as

---

[3] Doc. 19-9, p. 2; Doc. 25-1, p. 4.
[4] *Id.*
[5] Doc. 19-6, p. 14.
[6] *Id.* pp. 5–9 (The vehicle payment was allegedly 49 days late.).
[7] Doc. 19-9.
[8] *Id.*
[9] *Id.*
[10] Doc. 19-11, p. 2.

stolen.[11] Officer Kimberly Curran was in her patrol car travelling north on US-171 when the white 2011 Ford Explorer bearing Louisiana Plate No. 872CXI was spotted travelling south.[12] After spotting the Ford Explorer, Officer Curran turned around in the parking lot just south of the Valero Gas Station located at 393 US-171.[13] Officers Kimberly Curran, Randy Schlesinger, and Kevin Fontenot conducted a traffic stop of the white 2011 Ford Explorer at the Wendy's Restaurant located at the intersection of US-171 and Theriot Rd in Moss Bluff, Lake Charles.[14] Officers exited the patrol cars with weapons drawn and Officer Curran directed the driver to exit the vehicle facing away with her hands up.[15] Offer Schlesinger directed the driver, Plaintiff Charles, to back away from the vehicle towards him.[16] Officer Schlesinger directed Plaintiff Charles to stop, kneel down to her knees, and Officer Curran placed hand cuffs on Plaintiff Charles.[17] Officer Curran's weapon was holstered while cuffing Plaintiff Charles.[18] Officer Schlesinger directed the other three passengers to remain in the car.[19] Plaintiff Charles was placed in Officer Curran's patrol unit by Officer Curran.[20] Officer Curran then directed the front right passenger, Plaintiff Skyler Johnson, to walk backwards with her hands up towards her, then stop and go to her knees, whereby she was placed in the back of Officer Schlesinger's patrol unit by Officer

---

[11] *Id.*; doc. 19-10, pp. 1–2; doc. 19-12, p. 1; doc. 19-3, No. 2, CP163_Front_178_8232019182830.
[12] Doc. 19-3, No. 2, CP163_Front_178_8232019182830.
[13] *Id.*
[14] *Id*; doc. 19-3, no. 1, CP116_Front_247_8232019182949; doc. 19-10, pp. 1–2; doc. 19-11, p. 2.
[15] Doc. 19-3, No. 2, CP163_Front_178_8232019182830, CP163-A_178_082419014942_17.
[16] *Id.*
[17] *Id.*
[18] Id.
[19] *Id.*
[20] *Id.*

Curran.[21] Officer Schlesinger then stated there was a child in the vehicle.[22] Officer Schlesinger then directed the rear right passenger, Plaintiff Nashya Hayes, to exit the vehicle, walk backwards with her hands up towards him, then stop and go to her knees, whereby she was handcuffed by Officer Curran and placed in Officer Fontenot's patrol unit by Officer Curran.[23] After being queried by Officer Curran, Plaintiff Hayes informed Officer Curran that the passenger in the rear left seat was an eight year old girl.[24] Officer Fontenot then approached the white 2011 Ford Explorer and holstered his weapon approximately six feet from the vehicle.[25] Officer Fontenot opened the rear left door where the eight-year-old child was sitting.[26] The child exited the vehicle and then sat in Officer Curran's vehicle with Plaintiff Charles.[27] All officers sidearms were holstered during the interaction with the child.[28]

Officer Curran informed Plaintiff Charles that her vehicle had been reported stolen by the car company who she bought it from.[29] The officers informed Plaintiff Charles that she was not going to be arrested.[30] Officers also informed Plaintiff Charles that they were not going to charge her for felony possession of a stolen vehicle even though they had a basis to do so because they understood situation; that is, because the vehicle was reported stolen by A&D, officers had to treat the vehicle as stolen even though officers discovered

---

[21] *Id.*; doc. 19-3, No. 3, CP190_Backseat_85_8232019182950, CP190_Front_85_8232019182949.
[22] Doc. 19-3, No. 2, CP163_Front_178_8232019182830, CP163-A_178_082419014942_17.
[23] *Id.*
[24] Doc. 19-3, No. 2, CP163-A_178_082419014942_17.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*

Page 4 of 13

it was a civil matter after they had made the .[31] Officers informed Plaintiff Charles that they would have to tow the vehicle since it was reported stolen.[32] Officer Curran then informed Plaintiff Charles that because her white 2011 Ford Explorer was reported as a stolen vehicle, the officers had to treat the stop as such, which typically involves a more serious and dynamic environment than a typical, routine traffic stop.[33] Officers released Plaintiffs from handcuffs, informed Plaintiff Charles that they would complete a report, and that either her or the company, A&D, would be able to pick it up from the towing company after the late payment issues were resolved.[34]

## II.  **LEGAL STANDARD**

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). The Court is not required to search the record for material fact issues. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). However, resolving doubts in favor of the non-moving party is only triggered when the parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III. LAW & ANALYSIS

Here, Defendants argue that summary judgment as to all claims is warranted because the Plaintiffs cannot identify defendants to this suit and cannot establish the essential elements of their claims against any of the Defendants. Plaintiffs concede that all federal claims against Defendants should be dismissed, however, the state claims should be dismissed without prejudice so Plaintiffs can reassert them in state court. Accordingly, Defendant's summary judgment will be granted as to all federal claims in the Complaint,

which will be dismissed with prejudice. The remaining claims in the Complaint are for damages under Louisiana Civil Code Articles 2315 and 2320. Specifically, Plaintiffs allege that unknown deputies committed tortious acts on them, including assault, aggravated assault, battery, and attempted aggravated battery, for which Sheriff Mancuso, on behalf of Calcasieu Parish Sheriff's Department, as the employer of the unknown deputies, is vicariously liable. The Court will retain supplemental jurisdiction over the remaining state law claims since the Court has proceeded through much of the litigation, the deadlines for discovery and dispositive motions having passed, and a motion for summary judgment has been filed. *See Heggemeier v. Caldwell Cnty., Texas*, 826 F.3d 861, 872 (5th Cir. 2016) ("District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed.").

Defendants argue that Plaintiffs' state law vicarious liability claims against Sheriff Mancuso cannot be sustained for alleged acts committed by unnamed deputies. Additionally, Defendants argue that the body camera video of the stop shows that officers were acting on the basis of probable cause and that the defense of qualified immunity applies to Plaintiffs' claims. Plaintiffs argue that the unnamed deputies acts were extreme and outrageous, which caused severe and debilitating emotional distress and physical pain to Plaintiffs, which presents a genuine issue of material fact that warrants a denial of Defendants' motion for summary judgment on their state law claims.

First, Plaintiffs' Complaint names Unknown Deputies and Sheriff Mancuso as Defendants. The Fifth Circuit observes that "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored. However, . . . plaintiff should be given an opportunity

through discovery to identify the unknown defendants . . . ." *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 243 (5th Cir. 1993) (internal quotations omitted) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980). This case was filed over three years ago on June 24, 2020.[35] Plaintiffs also had over three years, until July 17, 2023, to amend their complaint and properly name defendants.[36] They, however, did not. Accordingly, involuntary dismissal for failure to prosecute under Federal Rule of Civil Procedure 41(b) is warranted. *See id.* (holding dismissal appropriate where plaintiff failed to identify and serve unnamed defendants after three years). Therefore, Rule 41(b) is grounds for a dismissal with prejudice of all state law claims under Louisiana Civil Code article 2315 against unnamed defendants.

Additionally, under the Rule 56, Defendants have met their burden of identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *See Tubacex*, 45 F.3d at 954. Plaintiffs' Complaint alleges the intentional torts of assault and battery.[37] Under Louisiana law, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So.2d 389, 391 (La.1987). "To establish battery, the plaintiff need not prove malice or an intent to inflict actual damage; a showing that the actor intended to inflict an offensive contact without the other's consent is sufficient. Assault is the imminent threat of a battery." *Doss v. Morris*, 86 F. App'x 25, 28 (5th Cir. 2004) (citing *Bulot v. Intracoastal Tubular Services, Inc.*, 730 So.2d 1012, 1018 (La. Ct. App. 4th Cir.1999)).

---

[35] Doc. 1.
[36] Doc. 16.
[37] The Court will not consider Plaintiffs' claims of aggravated assault and battery as those are criminal offenses.

"Words alone do not constitute an assault, but a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact may suffice." *Fontenot v. Gusman*, No. CIV.A. 11-1772, 2012 WL 5196426, at *17 (E.D. La. Oct. 18, 2012) (collecting cases) (internal quotations omitted).

Here, Defendants offer summary judgment evidence of patrol unit and officer body camera video footage of the entire stop.[38] Moreover, "when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should view the facts in the light depicted by the videotape." *E.g.*, *Scott v. City of Mandeville*, 69 F.4th 249, 254 (5th Cir. 2023) (cleaned up). The unnamed officers had a basis to conduct a traffic stop of the 2011 white Ford Explorer driven by Plaintiff Charles based on the vehicle being reported as stolen in N.C.I.C. *See State v. Mundy*, 87 So. 3d 300, 303 (La. Ct. App. 3d Cir. 2012); *cf. United States v. Broca-Martinez*, 855 F.3d 675, 680 (5th Cir. 2017) ("A state computer database indication of insurance status may establish reasonable suspicion when the officer is familiar with the database and the system itself is reliable."). However, "even if an officer has probable cause, the use of excessive force in effecting the arrest becomes an actionable claim for damages." *Zerbe v. Town of Carencro*, 884 So. 2d 1224, 1228 (La. Ct. App. 3d Cir. 2004), *writ denied*, 889 So. 2d 270 (La. 2005), *and writ denied*, 889 So. 2d 271 (La. 2005) (citing *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977)). Furthermore, "[e]xcessive force transforms ordinarily protected use of force into an actionable battery,

---

[38] Doc. 19-3.

rendering the defendant officer and his employer liable for damages." *Id.* When police officers make a routine traffic stop, they may order passengers to get out of the car pending completion of the stop. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). But when police officers make a felony car stop,

> rather than approach the stopped vehicle, stay back and order the occupants of the vehicle to show their hands, exit the vehicle, and walk back to the officers' position. It is also typical during felony stops for officers to unholster their guns. These measures are meant to ensure the safety of everyone involved—the occupants of the vehicle, the officers, and the public.

*United States v. Williams*, 843 F. App'x 111, 113 (10th Cir. 2021). Here, the unnamed officers had a predicate to conduct a felony car stop of the white 2011 Ford Explorer because they were acting on the information and belief that it was stolen, *i.e.*, probable cause. The Court has reviewed the patrol unit and body camera video of the stop.[39] The video evidence, outlined in Part I of this memorandum, shows that the officers acted in a professional and reasonable manner in the performance of their duties. Furthermore, the video evidence categorically rejects Plaintiffs' claims in their Complaint that the unknown deputies caused them damages by tortious acts. The unnamed officers conduct and treatment of Plaintiffs is far from that which the arrestee in *Zerbe*, 884 So. 2d 1224, experienced. There, "[t]he video tape reveal[ed] the officers continued to beat [the arrestee] after he was maced and on the ground." *Id.* at 1228. Thus, Defendants have met their burden on summary judgment to show an absence of a genuine, material dispute of fact.

---

[39] *Id.*

The burden now shifts to Plaintiffs, who "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). In their opposition to motion for summary judgment, Plaintiffs claim that they "were held at gun point by multiple members of the Calcasieu Parish Sheriff's Department," which they have "valid claims for vicarious liability for negligence on behalf of the sheriff, as well as intentional infliction of emotional distress and aggregated assault with a firearm."[40] To these claims, Plaintiffs offer no probative evidence beyond the pleadings. Moreover, the claim of intentional infliction of emotional distress is not even plead in the Complaint. Also, aggravated assault is a criminal offense found in Louisiana Revised Statutes section 14:37, and thus is unsuitable for this Court's subject matter jurisdiction. In all, Plaintiffs' recounting of the events on August 23, 2019, conflicts with the summary judgment record. And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). In opposing summary judgment, Plaintiffs are "required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *E.g.*, *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 176 (5th Cir. 2016). Yet, Plaintiffs have not done so. Hence,

---

[40] Doc. 25, p. 7.

Defendants will prevail on summary judgment as to all of Plaintiffs' state law claims against unnamed defendants.

As to claims against Sheriff Mancuso under Article 2320, Plaintiffs must establish fault of the officer employees in order to establish fault for the employer. *See Doss v. Morris*, 86 F. App'x 25, 29 (5th Cir. 2004) (affirming dismissal of all state law claims against employer on a theory of vicarious liability where underlying state law claims against employee are dismissed). Plaintiffs' claims under Louisiana Revised Statutes section 2320 must fail because they cannot prevail on summary judgment to show that an employee of Sheriff Mancuso committed a tort in addition to their failure to identify, name in the pleadings, and serve employees of Sheriff Mancuso, for which he may be held liable. Consequently, all state law claims against Sheriff Mancuso will be dismissed with prejudice.

Lastly, as to the Defendants' asserted defense of qualified immunity, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020). Yet still, Plaintiffs have failed to make a showing with summary judgment evidence that Defendants violated a statutory or constitutional right and that Defendants' defense is not available. In sum, the patrol unit and officer bodycam videos of the August 23, 2019 stop of Plaintiff Charles's white 2011 Ford Explorer is uncontroverted evidence that the responding officers of Calcasieu Parish Sherriff's Office conducted themselves without violating Plaintiffs' constitutional rights and without committing any tortious acts. Plaintiffs' claims cannot survive summary judgment based

on the pleadings, unsupported assertions, and conclusory arguments alone; some evidence of contradictory facts is required to create a genuine issue of material fact for trial. *See Little*, 37 F.3d at 1075 (observing that non-movant's burden cannot be satisfied "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence") (cleaned up) (collecting cases). The patrol unit and body camera video of the unnamed officers' conduct is best summarized by what Plaintiff Charles told the responding officers at the scene: "you handled your jobs correctly."[41]

## IV. CONCLUSION

For the above-mentioned reasons, Defendants' Motion for Summary Judgment (Doc. 19) will be granted and all claims against Defendants in the above caption matter will be dismissed with prejudice.

**THUS DONE AND SIGNED** in Chambers on this 15th day of September 2023.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE

---

[41] Doc. 19-3, No. 2, CP163-A_178_082419014942_17, @0:21:55.